42 C.C.P.A. (Patents)

### MINNESOTA MINING & MFG. CO.
### v.
### TARRANT MFG. CO.
### Patent Appeal No. 6093.

United States Court of Customs and Patent Appeals.
Feb. 8, 1955.
Rehearing Denied March 18, 1955.

Harold J. Kinney, St. Paul, Minn., and Mark W. Gehan, St. Paul Minn. (Carpenter, Abbott, Coulter & Kinney, St. Paul, Minn., of counsel), for appellant.

Luther W. Hawley, New York City, for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

COLE, Judge.

Appellant herein seeks reversal of the decision of the Examiner-in-Chief of the United States Patent Office in an opposition proceeding wherein it was held, in affirmance of the decision of the Examiner of Interferences, that appellee's trademark, "Scotchman," was not confusingly similar to either "Scotch," "Scotchlite," or "Scotch Boy," trade-marks previously adopted, used, and registered by appellant. Minnesota Mining & Manufacturing Company v. Tarrant Manufacturing Co., 98 U.S.P.Q. 33.

Briefly reviewed, the material facts presented on the record before us are these: Appellee, a manufacturer of various kinds of equipment for street and highway use since 1911, filed an application in 1949 to register "Scotchman" as a trade-mark on the Principal Register, the mark being applied to goods described in the application as "motor driven mechanical apparatus for spreading flake, chip and granular material on highways, land and water." Specifically, the mark was first affixed in 1948 to a mechanical "spreading" apparatus designed to be hung on the back of a truck and used for spreading either rock salt on street and highway surfaces to disintegrate ice and snow, or, in the summer, for spreading calcium chloride on such surfaces to control dust. This apparatus is provided with a hopper in which the material to be spread is placed. The material flows through a chute and is blown on the highway by a stream of air generated by a blower. Since the apparatus was designed to operate satisfactorily by spreading only a minimum quantity of such material, appellee claimed it was economical and thrifty in use. It was hence named the "Scotchman." Appellee sells its "Scotchman" apparatus over a wide area of the United States,

and in Canada, sales principally being made to public officials and maintenance engineers in state, county, and city highway departments.

Appellant, also a manufacturer for many years of certain goods for street and highway use, opposed the registration of "Scotchman," contending that such mark was likely to lead to confusion in trade with any one of several of its well known, widely advertised, and previously registered family of "Scotch" marks, i. e., primarily "Scotch," "Scotchlite," and "Scotch Boy." The statutory basis for the opposition was under that clause of section 2(d) of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051(d), relating to the likelihood of confusion, mistake, or deception of purchasers as to the source of origin of the goods. In its notice of opposition, appellant emphasized that its "Scotchlite" reflective material in sheet form for application to highway signs, guard rails, etc., and its "Scotchlite" vacuum applicators and squeeze rollers for actually applying such reflective sheeting to the sign surfaces, were goods closely related to appellee's "Scotchman" apparatus. In addition, appellant set forth its prior registrations of "Scotch" for pressure-sensitive adhesive tape, and tape dispensers, "Scotch Boy," also for pressure-sensitive adhesive tape, and "Scotchlite" for adhesive cements.

Clarifying further the nature of appellant's products and apparatus, the "Scotchlite" reflective sheeting contains granular material consisting of numerous glass spheres or beads imbedded in a synthetic resin backing for the reflection of light. It is used primarily in connection with markers used on streets and highways for safety and traffic control purposes, and is sold to various highway departments throughout the country. Other uses, however, are apparent. The "Scotchlite" vacuum applicator is a motor driven mechanical apparatus used for applying the reflective sheeting to highway signs or other desired surfaces. The "Scotchlite" squeeze roller applicator is a unit of apparatus designed for the application of the reflective sheeting from a roll of such sheeting continuously to backing materials. Both of these "Scotchlite" applicators are therefore used to mount "Scotchlite" reflective sheeting. They are sold to highway departments whose engineers, in the shop, apply the sheeting to the desired surface.

Appellant also sells reflecting glass beads for application to pre-formed paint lines on streets and highways. Prior to 1948, this product was sold under the "Scotchlite" mark. Since that time, however, it has been sold under another of appellant's trade-marks, i. e., "Superbrite." Appellant does not manufacture any mechanism for distributing its glass beads onto the highway.

A liquid marking composition containing glass beads for application to highway or similar surfaces to produce a reflective coating is also sold by appellant under its "Centerline" trade-mark. Appellant does not sell any machine for applying this reflective compound.

Appellee admitting that appellant has used each of the aforesaid marks prior to its own use of "Scotchman," the question involved is whether appellee's mark so resembles either "Scotch," "Scotch Boy," or "Scotchlite" as to be likely, when applied to the goods, to cause confusion, mistake, or deception of purchasers as to the origin of such goods.

In his opinion, the Examiner-in-Chief took the position that "Scotchlite" was the only mark of appellant used on material having a connection with highways or highway maintenance. Comparing this mark with appellee's "Scotchman," the examiner stated:

" * * * It is apparent that the first syllable of 'Scotchman' and 'Scotchlite' are the same. In cases like this it has been held that a newcomer who adopts the first part of an old mark must use such word or words for the remainder of the mark so as to lead one away from any thought springing from the commonly used first word. In the instant case applicant's second syllable

Page 4 of 5

S

'man' is totally different in sound, meaning and appearance from the second syllable 'Lite' of opposer's. Also taken as a whole, the word 'Scotchman' is different in meaning, appearance and sound from 'Scotchlite,' so that even if it were held that the goods upon which opposer uses the mark 'Scotchlite' are closely analogous to applicant's goods, *which they are not,* opposer still would not prevail due to the dissimilarity of the marks." [Italics added.]

In its brief, appellant does not seriously dispute the fact that there is a wide difference between appellee's granular spreading "Scotchman" apparatus and "Scotch" and "Scotch Boy" pressure-sensitive adhesive tape and tape dispensers. Appellant strenuously urges, however, that its "Scotchlite" reflective sheeting has numerous beads of granular material coated thereon, and that its "Scotchlite" motor driven vacuum applicators and squeeze rollers are used for the application of such material to highway signs and the like. Appellant thereby contends that there is a close relationship between these particular products, and that they are all sold to the same class of purchaser. Underlying its contentions with respect to the relationship between the goods is appellant's basic contention that "Scotchman" does not sufficiently differ from its "Scotch" or allied family of marks, in which it claims broad rights, to alleviate the likelihood of confusion among purchasers in the highway maintenance field as to the origin of the goods of the parties.

Appellant clearly not having any right to exclusive use of the word "Scotch" on all possible items of manufacture, we agree with the examiner that the particular use by appellant of "Scotch" and "Scotch Boy" as trade-marks for tape and tape dispensers need not be considered in resolving appellee's right to register "Scotchman" as a trade-mark for motor driven mechanical apparatus for spreading salt and calcium chloride on highways. Manifestly, the goods are wholly unrelated.

We therefore direct our attention to appellant's "Scotchlite" mark, as applied to goods and apparatus consisting of light reflective material in sheet form, adhesive cements, vacuum applicators, and squeeze rollers. In doing so, we have considered the alleged confusingly similar resemblance between that mark and appellee's "Scotchman" in the light of the testimony and illustrative exhibits in the record bearing on the nature of the respective goods. While such goods are sold to the same class of purchaser, they are specifically different in use and character, as heretofore indicated, and the marks "Scotchlite" and "Scotchman," as applied to such goods, present sufficient distinction in sound, appearance, and meaning as to obviate any likelihood that purchasers in the highway maintenance field would be confused or deceived into believing that the goods emanated from the same source. In this latter respect, we believe that the public or semi-public officials representing the administration of our highway and street systems must be deemed to be discriminating buyers, particularly where the goods involved, as here, are relatively expensive and often purchased in quantity.

In its assignment of errors to this court, appellant contended that the Commissioner of Patents erred in failing to personally consider, on its merits, a petition for reconsideration filed by appellant for correction and revision of the decision of the Examiner-in-Chief. The petition was denied by the Commissioner on authority of his decision in Bordenkircher v. Solis Entrialgo y Compania, 100 U.S.P.Q. 268, which held:

"Appeals to the Commissioner in trade-mark cases may be heard and decided by the Commissioner of Patents, or by an Assistant Commissioner or an Examiner-in-Chief in accordance with an order of delegation made by the Secretary of Commerce (16 Federal Register 2771, 645 O.G. 1054) under Reorganiza-

tion Plan No. 5 of 1950 (64 Stat. 1263) [5 U.S.C.A. following section 133z–15]. The decisions made by the officers to whom the authority has been delegated are subject to direct review by the Court of Customs and Patent Appeals on appeal, or by the District Court in a civil action, in the same manner as the decisions of the Commissioner of Patents in such cases (a number of decisions of the courts reviewing decisions of an Examiner-in-Chief in trade-mark cases have already been rendered). The petition for rehearing by the Commissioner of Patents in person is in a sense an appeal to one officer from the decision of another. It has been held in a number of instances in the Patent Office that there is no such 'appeal' to the Commissioner of Patents from the decision of an Assistant Commissioner of Patents on an appeal in a trademark case. The same practice has been followed when the decision on the appeal is by another officer of the Patent Office to whom the same function has been delegated."

We believe the petition for reconsideration was properly denied, and for the reasons hereinbefore stated the decision of the Examiner-in-Chief is affirmed.

Affirmed.

GARRETT, C. J., and O'CONNELL, J., dissent.